**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::
**CHARLES W. TOLAND, JR.**

        **Petitioner,**

  **v.**                                   **9:04-CV-0773**
                                          **(GLS)**

**JAMES WALSH, Superintendent**

        **Respondent.**
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::
**APPEARANCES:**                    **OF COUNSEL:**

**FOR THE PETITIONER:**

**CHARLES W. TOLAND, JR.**
Petitioner, *pro se*
No. 96-A-5505
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

**FOR THE RESPONDENT:**

**HON. ANDREW M. CUOMO**      **ALYSON J. GILL, Esq.**
Office of the Attorney General      Assistant Attorney General
State of New York
120 Broadway
New York, New York 10271

**GARY L. SHARPE**
**UNITED STATES DISTRICT JUDGE**

### MEMORANDUM-DECISION AND ORDER

**I.**    <u>**Background**</u>

      **A.**    <u>**State Court Proceedings**</u>

According to the testimony adduced at trial, on September 13, 1994, Paulette Dempster

and her son, Christopher, had dinner at the home of her friend and neighbor, Brandie Caldwell

in Amsterdam, New York.  *See* Transcript of Trial of Charles W. Toland, Jr. (7/23/2001)

("Trial Tr.") at pp. 557-58.   Dempster thereafter asked Caldwell if she would babysit

Christopher so that Dempster could drive to Schenectady with petitioner, *pro se* Charles W.

Toland, Jr.  *Id.* at p. 558.  Toland, who was driving a black Escort that had a loud muffler,

subsequently drove to Caldwell's apartment to pick up Dempster, *id.* at p. 559, who at the time

was wearing a white t-shirt and navy blue pants.  *Id.* at p. 563.  The two left Caldwell's home

and briefly returned at approximately 8:30 p.m. to give Caldwell some milk for the child.  *Id.* at

pp. 562-64.  Caldwell eventually fell asleep waiting for Dempster to return and did not awaken

until 7:30 a.m. the following morning.  *Id.* at pp. 564-65.  Soon thereafter, Caldwell called

Christopher's grandmother, L. Venegas, who eventually came to pick up Dempster's child so

that Caldwell could go to work.  *Id.* at p. 565.

The following evening, when Dempster still had not returned, her sister, Nicole,

contacted law enforcement agents and requested that an officer come to her home so that she

could fill out a missing person's report relating to Paulette.  *Id.* at p. 594.  Around that same

time, Nicole contacted Toland and asked him if he knew anything about her sister's

whereabouts, to which Toland responded that he had left Dempster in Schenectady with some

"friends."  *Id.* at p. 595.  When Nicole pressed Toland for more specific information about with

whom he left Dempster, Toland just provided her with vague descriptions of the individuals

whom he claims Dempster was with at the time he left her.  *Id.*

The record further reflects that on September 16, 1994, Patrolman Patrick C. Miller of

the Amsterdam police department was assigned to investigate Dempster's disappearance.  *Id.* at

p. 637.  Part of that assignment included locating and questioning Toland about Dempster.  *Id.*

Officer Miller located Toland at his home, who then agreed to voluntarily accompany the

officer to the police station and provide a written statement relating to his interactions with

Dempster just prior to her disappearance.  *Id.* at pp. 638-39.  In his statement, which Toland

gave after being advised of his *Miranda* rights,[1] *id.* at p. 643, he admitted that he was with

Dempster and Caldwell on the night of September 13, 1994, and explained that when Caldwell

informed him that she "was looking for a date," Toland advised her that he knew a friend

named "José" who lived in Schenectady.  *Id.*  Toland informed Caldwell that he was going to

Schenectady and that when he arrived there he would invite José to return to Amsterdam with

Toland.  *Id.*  Toland stated that Dempster expressed interest in accompanying him to

Schenectady, and that while the two were driving to that location, she asked him if he could get

some "weed."  *Id.*  Toland declared that before he was able to secure marijuana for Dempster

after arriving in Schenectady, he met a friend with whom he began having a conversation.  *Id.*

Dempster became impatient as that conversation continued, and soon "started to nag" Toland

about returning to Amsterdam.  *Id.*  Around that time, a silver-blue Chrysler New Yorker drove

up and Dempster starting to talk with the driver, whom Toland described as a heavy black man,

at least six feet, four inches tall, whom she had met previously at a local club.  *Id.* at  643-44.

Soon thereafter, Dempster purportedly walked over to Toland, exclaimed "fuck you," and

directed Toland to call Caldwell and advise her that Dempster was "on my way."  *Id.*  She then

retrieved her purse from Toland's car and left with the man who was driving the New Yorker,

together with two other individuals who had accompanied that man.  *Id.*

      The record further reflects that about a year later, on November 8, 1995, Air National

Guardsman Ralph Fiorillo was looking for signs of deer in the woods surrounding his parents'

---

[1]      *Miranda v. Arizona*, 384 U.S. 436 (1966).

Amsterdam home. *Id.* at pp. 742-43. Fiorillo was following a deer trail he had discovered

when he came upon what appeared to be a pair of shoes. *Id.* at p. 743. Upon closer

examination, he also noticed a ladies' pocketbook, a skeleton and some worn clothing in the

area. *Id.* at pp. 743-44. Fiorillo ran back to his car, drove to his mother's house and told her

what he had found. *Id.* at pp. 744-45. Soon thereafter, she called the police, who arrived at the

scene minutes after the call. *Id.* at p. 745.

Comparison of the teeth located in the body found at that scene and dental x-rays that

had been taken of Dempster in 1991 established that the decomposed body found by Fiorillo

was that of Paulette Dempster. *Id.* at pp. 773-774, 982-84.[2] Dempster's body was

subsequently examined by Dr. Barbara Wolf, a forensic pathologist. Based on the results of

her autopsy, together with other investigative work conducted by Dr. Wolf including her

review of photographs at the scene, Dempster's medical records and police reports, Dr. Wolf

concluded that the cause of Dempster's death was homicide, most probably as a result of

asphyxia. *Id.* at pp. 1007-08.[3]

The evidence at trial also revealed that when the police examined the crime scene near

Dempster's body, law enforcement agents discovered a small flashlight. *Id.* at p. 876. That

flashlight, which contained a suction cup on one end, was identified at trial as the flashlight

which Toland had typically attached to the windshield of his car. *Id.* at pp. 780-781, 814-15,

---

[2]     Around Dempster's body, law enforcement agents also found a strip of cloth, later identified at trial as an ace bandage.   Trial Tr. at pp. 885-86.

[3]     The pathologist's examination of Dempster failed to disclose evidence that she had recently suffered from any disease, used drugs, or sustained either a gun shot wound or blunt force trauma.  Trial Tr. at p. 1007.

858-59, 912.

While in prison after an unrelated conviction, Toland became acquainted with another inmate at the Sullivan correctional facility, Francesco Fernandez.  *Id*. at pp. 1163-64. Fernandez testified at trial that during one conversation between the two men, Toland asked Fernandez if he had "read about the murder of the Dempster girl."  *Id.* at p. 1165.  Fernandez admitted that he had not, and then jokingly asked Toland if he was involved in that homicide. *Id.*  Toland then boasted: "Yeah, I killed the bitch."  *Id.* at p. 1166.  He then remarked that he "should have put Dempster in the dumpster" and began laughing.  *Id.*  During a later conversation between the two, Toland explained to Fernandez that Dempster had owed Toland money for drugs, and when she was unable to pay, he asked her for sex as a form of payment. *Id.*  She refused his request and the two began to fight.  *Id.*  During that fight, Toland initially attempted to strangle her with a "scarf," however she managed to get that piece of cloth off of her neck.  *Id.*  Toland advised Fernandez that he then began choking her with his hands, and when she died, "he got scared and left."  *Id.*[4]

As a result of the foregoing, on January 18, 2001, a Montgomery County grand jury returned a two count indictment against Toland.  The first count in that accusatory instrument alleged that Toland intentionally killed Dempster, in violation of N.Y. Penal L. § 125.25(1), while the second count charged Toland with causing her death "under circumstances evincing a depraved indifference to human life," contrary to N.Y. Penal L. § 125.25(2).  *See* Indictment No. 014-2001 ("Indictment").  Toland's jury trial on those charges commenced in Montgomery

---

[4]       On cross-examination, Fernandez specifically denied that he ever reviewed any of Toland's legal materials or that he had worked with him on any criminal matter in which he was involved.  Trial Tr. at pp. 1176-78.

5

County Court on June 23, 2001 with Montgomery County Court Judge Felix J. Catena presiding.  At the conclusion of that trial, Toland was found guilty of the intentional murder of Dempster.  *See* Trial Tr. at p. 1662.

On September 25, 2001, six days prior to sentencing, Toland, acting *pro se*, mailed a motion he drafted pursuant to New York's Criminal Procedure Law ("CPL") § 330.30 ("CPL § 330 Motion") to the court and the prosecutor in which he sought an order vacating his conviction based upon his claim of newly discovered evidence.  *See* Record on Appeal ("Record") at pp. R118-78.  Toland included several affidavits along with that motion.  In one affidavit dated August 17, 2001, Robert Ward, an inmate at the Sullivan correctional facility, stated that he knew both Toland (by the nickname "Bugsy,") as well as Fernandez, whom Ward knew by the nickname "Life."  *Id.* at p. R145.  Ward described Fernandez as a "jailhouse lawyer" who had helped Ward litigate a federal habeas petition he was pursuing.  *Id.*  In another affidavit, dated August 24, 2001, Balau Lewis, also an inmate at the Sullivan Correctional facility, stated that he knew Toland and Fernandez in 1997, and that Balau was aware of the fact that Fernandez frequently helped inmates with their legal work.  *See id.* at p. R153.  At one point, Balau introduced Fernandez to Toland so that Fernandez could help Toland with legal matters on which he was working.  *Id.*  Roger Simmonds also provided Toland with an affidavit in conjunction with the CPL § 330 Motion in which Simmonds declared that on many occasions, he had seen Fernandez "look over" Toland's legal papers.  *Id.* at p. R148.  Simmonds further declared in his affidavit that one day, he saw a corrections officer packing up Fernandez's belongings.  *Id.*  The officer told Simmonds that Fernandez had "signed into" protective custody, and that Fernandez would be taking with him the legal work

6

of several inmates, including the legal work of Toland.  *Id.*

Toland argued in his CPL § 330 Motion that Fernandez had become aware of the strip of cloth found near the body of Dempster, which Fernandez apparently referred to as a "scarf" in his trial testimony, in the course of Fernandez's review of Toland's legal materials.  Record at p. R124.  Toland additionally asserted that Fernandez testified falsely at trial when he claimed that he had never discussed or reviewed any of Toland's legal materials while at the Sullivan correctional facility.  *Id.*  Toland further argued that he was unaware that Fernandez – whom Toland knew only by the nickname "Life" – would testify against Toland until Fernandez appeared at trial, and that if Toland knew that Fernandez had planned on claiming at trial that he had never performed legal work for Toland, he could have impeached that testimony by calling the individuals who had provided affidavits in support of his CPL 330 Motion.  *See* Record at pp. R126-33.

The County Court did not rule on Toland's CPL § 330 Motion at the time of sentencing, and instead converted that application to a CPL § 440.10 motion.  *See* Transcript of Sentencing of Charles W. Toland, Jr. (10/1/01) at pp. 8-10.  Judge Catena reserved on that application and then sentenced Toland to a term of imprisonment of twenty-five years to life on his second degree murder conviction.  *Id.* at p. 32.

In a Decision and Order dated December 21, 2001, Judge Catena denied Toland's CPL § 330 Motion/CPL § 440.10 Motion.  *See* Record at pp. R115-17 ("December, 2001 Order"). In so ruling, the court found that Toland had failed to establish that he could not have produced the evidence which he claimed he would have used to impeach Fernandez if he had exercised due diligence.  *Id.*  Judge Catena also determined that Toland had not established the other

claim he had asserted in that application, which alleged that the prosecution suborned perjurious testimony at Toland's trial.  *Id.*

On or about December 9, 2002, petitioner filed a motion pursuant to CPL § 440.10 to vacate the judgment of conviction.  *See* Dkt. No. 21, Exh. C ("December, 2002 CPL Motion"). In that application, Toland principally claimed that trial counsel rendered ineffective assistance. *Id.*  In support of that assertion, Toland argued that counsel was ineffective for failing to:  i) protect Toland's right to appear before the grand jury;  ii) adequately impeach Fernandez at trial; iii) request a missing witness charge regarding potential witnesses who did not testify for the prosecution; and iv) use exculpatory evidence in counsel's possession.  *See id.*  In a response dated December 17, 2002, the Montgomery County District Attorney argued that Toland's December, 2002 CPL Motion should be denied because his appeal before the Appellate Division was still pending.  *See* Dkt. No. 21 at Exh. D (citing CPL § 440.10(2)(b)).[5] Judge Catena denied Toland's December, 2002 CPL Motion in the court's Decision and Order dated December 19, 2002.  *See* Dkt. No. 21 at Exh. E ("December, 2002 Order").  Toland's counsel sought leave to appeal that order from the New York State Supreme Court Appellate Division, Third Department, which granted that application and consolidated that appeal, as well as his appeal of the denial of the converted CPL § 330 Motion, with the direct appeal of his criminal conviction.  *See People v. Toland*, No. 14479 (3d Dept. Mar. 13, 2003)

_____

[5]        That provision of the CPL provides, in relevant part:
[T]he court must deny a motion to vacate a judgment when:
> (b) The judgment is, at the time of the motion, appealable or
> pending on appeal, and sufficient facts appear on the record
> with respect to the ground or issue raised upon the motion to
> permit adequate review thereof upon such an appeal.

*See* CPL § 440.10(2)(b).

(reproduced in Record at p. R257).

On appeal, counsel raised the following five appellate claims:  i) the evidence adduced at trial was insufficient to establish Toland's guilt of second degree murder; ii) the testimony of Francesco Fernandez was incredible as a matter of law; iii) the denial of Toland's December, 2002 CPL Motion without a hearing was error; iv) the trial court erred by converting Toland's CPL § 330 Motion into a § 440.10 application and denying same without a hearing; and v) Judge Catena erred in denying a request for a mistrial filed by defense counsel. *See* Appellate Brief of Teresa C. Mulliken, Esq. (reproduced at Dkt. No. 21, Exh. F) ("App. Br.").  The Montgomery County District Attorney opposed that appeal, and in a written decision dated December 18, 2003, the Third Department denied Toland's direct appeal as well as his appeals relating to the CPL § 330 Motion and the December, 2002 Motion.  *See People v. Toland*, 2 A.D.3d 1053 (3d Dept. 2003).   By order dated May 21, 2004, Toland's application for leave to appeal that decision to New York's Court of Appeals was denied.  *People v. Toland*, 2 N.Y.3d 808 (2004).

**B.    This Proceeding**

Toland filed a petition for habeas corpus pursuant to 28 U.S.C. § 2254 in this District on July 6, 2004.  Dkt. No. 1.  In his pleading, Toland alleges that:  i) he was wrongfully denied his right to appear before the grand jury that indicted him; ii) he received the ineffective assistance of counsel during the criminal proceedings below; iii) the evidence adduced at trial was insufficient to support the jury's verdict; iv) the trial court erred in denying Toland's converted CPL § 330 Motion as well as his December, 2002 CPL Motion without a hearing; v) the testimony of Fernandez was incredible as a matter of law; vi) the County Court erred in

allowing portions of an audio tape recording into evidence; vii) Judge Catena wrongfully denied defense counsel's motion for a mistrial; viii) the trial court abused its discretion when it converted Toland's CPL 330 Motion into CPL § 440.10 motion; ix) the prosecutor engaged in misconduct in the criminal matter below; x) the jury charge delivered by Judge Catena was constitutionally infirm; and xi) the prosecution improperly bolstered the testimony of Fernandez in counsel's summation. *See* Petition at ¶ 12.[6]

After reviewing the petition, Toland's in forma pauperis application and the file in this matter, United States Magistrate Judge David E. Peebles granted Toland's in forma pauperis application and directed the respondent to file a response to Toland's petition. Dkt. No. 3. Before that response was filed, Toland filed a memorandum of law in support of his habeas application. *See* Dkt. No. 10 ("Supporting Mem."). The Office of the Attorney General for the State of New York, acting on respondent's behalf, thereafter filed a memorandum of law in opposition to Toland's application ("Resp. Mem."). *See* Dkt. No. 21.[7] On June 10, 2005, Toland filed, with the Court's permission, a "traverse" in further support of his application for federal habeas intervention. Dkt. No. 30 ("Traverse"). This matter is now currently before this Court for disposition.

**II.     Discussion**

───────────────────

[6]     The final "ground" asserted by Toland declares that he is "an innocent man who has been convicted of a crime which he did not commit, nor have anything to do with, or have any knowledge of." *See* Petition at ¶ 12(11). Although this claim does not assert a separate ground for relief, as will be discussed *post*, the Court has considered petitioner's claim that he is innocent of the crime in conjunction with its analysis of respondent's argument that Toland is procedurally barred from asserting some of his grounds for relief.

[7]     Respondent provided as exhibits to his response various state court records related to the criminal action brought against Toland.

A.    **Failure to Testify Before the Grand Jury**

Toland initially contends that he was wrongfully denied his right to appear before the grand jury in the criminal matter below.  *See* Petition at ¶ 12(1).  Petitioner also argues that the grand jury wrongfully returned a sealed indictment against him despite the fact that his "whereabouts ... were well known to the People."  *Id.*

Unfortunately for Toland, a criminal defendant's right to testify before the grand jury is not a constitutional right; rather, it is a statutory right created by New York State.  *See* CPL § 190.50(5).[8]  A claim arising out of a defendant's failure to testify before a grand jury therefore does not afford a petitioner a basis for federal habeas relief.  *Van Stuyvesant v. Conway*, No. 03 CIV. 3856, 2007 WL 2584775, at *25 (S.D.N.Y. Sept. 7, 2007) (citation omitted); *Montalvo v. Annetts*, No. 02 CIV.1056, 2003 WL 22962504, at *24 (S.D.N.Y. Dec. 17, 2003) (collecting cases); *McMoore v. Miller*, No. 98-CV-1915, 2002 WL 975305, at *8 (N.D.N.Y. Apr. 19, 2002) (Sharpe, M.J.) (citations omitted), *adopted*, *McMoore v. Miller*, No. 98-CV-1915 (N.D.N.Y. May 16, 2002) (Kahn, J.) (Dkt. No. 23), *appeal dismissed*, *McMoore v. Miller*, No. 02-2414 (2d Cir. Jan. 23, 2003) (No. 98-CV-0607, Dkt. No. 35); *see also Kohler v. Kelly*, 890 F.Supp. 207, 213 (W.D.N.Y.1994) (citations omitted), *aff'd*, 58 F.3d 58 (2d Cir. 1995). Therefore, Toland is not entitled to habeas relief on this ground.

B.    **Unexhausted Claims**

Next, the Court notes that in opposing Toland's habeas application, respondent argues

---

[8]    Federal courts have not recognized a constitutional right to indictment by a grand jury in state criminal prosecutions.  *See Campbell v. Greene*, 440 F.Supp.2d 125, 142 (N.D.N.Y. 2006) (McCurn, S.J.) (citing *Smith v. Walsh*, No. 00-CV-5672, 2003 WL 22670885, at *7 (E.D.N.Y. Oct. 20, 2003); *Alexander v. Louisiana*, 405 U.S. 625, 633 (1972)).

that Toland did not exhaust several of the grounds he has raised in the present petition.

Specifically, respondent contends that Toland failed to exhaust the following claims:  a) the

County Court erred in allowing portions of an audio tape recording into evidence; b) the

prosecutor engaged in misconduct; c) the jury charge was constitutionally deficient; and d)

several of the theories asserted by Toland in support of his ineffective assistance claim.  *See*

Resp. Mem. at p. 20.

It is well settled that a federal district court "'may not grant the habeas petition of a

state prisoner unless it appears that the applicant has exhausted the remedies available in the

courts of the State ....'"  *Shabazz v. Artuz*, 336 F.3d 154,160 (2d Cir. 2003)) (quoting *Aparicio

v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001)) (other citation omitted); *see also Ellman v. Davis*, 42

F.3d 144, 147 (2d Cir. 1994).  This is because "[s]tate courts, like federal courts, are obliged to

enforce federal law."  *Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir.) (quoting *O'Sullivan v.

Boerckel*, 526 U.S. 838, 844 (1999)), *cert denied sub nom.*, *Galdamez v. Fischer*, 544 U.S.

1025 (2005).[9]

This Court finds that petitioner has exhausted all of the claims he has raised in his

petition with the exception of:  i) certain theories he now asserts in support of his ineffective

assistance claim; and ii) his claim that Judge Catena committed error when he refused to "hold

a hearing" to determine if Fernandez was an agent of the police.  For example, although

respondent argues that Toland's claim that Judge Catena erred in allowing portions of an audio

---

[9]     This exhaustion requirement "reduces friction between the state and federal
court systems by avoiding the unseemliness of a federal district court's overturning a state
court conviction without the state courts having had an opportunity to correct the
constitutional violation in the first instance."  *O'Sullivan* 526 U.S. at 845; *see also Galdamez*,
394 F.3d at 72 (citing *O'Sullivan*).

tape recording into evidence is unexhausted, *see* Resp. Mem. at p. 20, that claim was asserted

by appellate counsel in her brief.  *See* App. Br. at pp. 27-34.  Additionally, Toland raised his

claim that the prosecution knowingly suborned perjurious testimony in his CPL § 330 Motion.

*See* Record at pp. R137-38.  A fair reading of the appellate brief filed on behalf of Toland

reveals that same also argued that the jury charge delivered by Judge Catena was

constitutionally deficient.  *See* App. Br. at pp. 58-59.

      Turning to Toland's habeas claim alleging ineffective assistance of counsel, this Court's

review of Toland's December, 2002 CPL Motion reveals that in that application, he claimed

that his trial attorney:  1) failed to call witnesses favorable to Toland's defense; 2) did not use

exculpatory evidence in counsel's possession in defense of the charges against Toland; 3) knew

that another individual was aware of Dempster's death more than a year before her body was

discovered but failed to use this information at trial; and 4) did not utilize police reports in

counsel's possession which tended to exculpate Toland.  *See id.*  Those theories are therefore

exhausted for purposes of the present habeas application.

      However, this Court agrees with respondent that the following theories relating to

petitioner's claim of ineffective assistance of counsel have not been raised by Toland in the

state courts:  1) trial counsel failed to object to the prosecutor's inaccurate statement of relevant

law made during the course of the County Court's *Sandoval*[10] hearing; 2) defense counsel

failed to object to the fact that the copy of the parole file relating to Fernandez that was

provided to defense counsel by the prosecution was incomplete; 3) trial counsel wrongfully

failed to move to dismiss the Indictment because it contained inconsistent charges; 4) defense

---

     [10]    *People v. Sandoval*, 34 N.Y.2d 371 (1974).

counsel erred in failing to request that the jury be instructed on lesser included offenses; and 5) trial counsel failed to impeach Dr. Wolf concerning prior testimony she had provided relating to the cause of Dempster's death. *See* Petition at ¶ 12(2). Moreover, Toland does not appear to have ever asserted in the state courts his habeas claim that the County Court improperly failed to conduct a hearing to ascertain whether Fernandez was an agent of the police (*see* Petition at ¶ 12(10)).

When a claim has never been presented to the state courts, a federal court may find that there is an absence of available state remedies "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." *Aparicio*, 269 F.3d at 90 (citing *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997)); *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000).[11] Therefore, this Court must determine whether it would be futile for Toland to present the above-mentioned claims to the state courts.

Toland cannot now pursue these theories through another appeal to the Third Department because a defendant is "entitled to one (and only one) appeal to the Appellate Division." *See Aparicio*, 269 F.3d at 91 (citations omitted). Moreover, Toland could not now properly raise these theories in another CPL 440 motion filed with the County Court because he could have raised these arguments in the December, 2002 CPL motion he previously filed with that court.[12] *E.g. Williams v. Burge*, No. 02-CV-0695, 2005 WL 2179423, at *14 (N.D.N.Y.

---

[11]     Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal district court has the authority to deny (but not grant) an unexhausted claim on the merits, and consider the exhausted claims on the merits. *Aparicio*, 269 F.3d at 91 n.5; *Cuadrado v. Stinson*, 992 F.Supp. 685, 687 (S.D.N.Y. 1998).

[12]     Respondent appears to suggest that Toland may still be able to raise his claim regarding trial counsel's failure to impeach Dr. Wolf with her prior trial testimony through

Aug. 15, 2005) (Peebles, M.J.) (citations omitted), *adopted*, *Williams v. Burge*, No. 02-CV-0695 (Dkt. No. 35) (N.D.N.Y. Dec. 7, 2005) (Hurd, J.).  Therefore, these claims are "deemed exhausted" for purposes of petitioner's habeas application.  *St. Helen v. Senkowski*, 374 F.3d 181, 183-84 (2d Cir. 2004), *cert. denied sub nom.*, 543 U.S. 1058 (2005); *Spence v. Superintendent, Great Meadow Correctional Facility*, 219 F.3d 162, 170 (2d Cir. 2000).  Although these claims are "deemed exhausted," they are procedurally defaulted.  *See Aparicio*, 269 F.3d at 90 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)); *see also Spence*, 219 F.3d at 170.

Federal courts may not review the substance of procedurally forfeited claims unless the petitioner demonstrates both good cause for the procedural default and actual prejudice resulting from the alleged violation of federal law.  *Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005); *Fama v. Commissioner of Correctional Services*, 235 F.3d 804, 809 (2d Cir. 2000); *Livingston v. Herbert*, No. 00-CV-1698, 2002 WL 59383, at *2 (N.D.N.Y. Jan. 3, 2002) (Homer, M.J.), *adopted*, No. 00-CV-1698 (Dkt. No. 20) (N.D.N.Y. Jan. 24, 2002) (Kahn, J.), *appeal dismissed*, No. 02-2083, slip op. at 1 (2d Cir. Aug. 28, 2002) (unpublished).

To establish cause in this context, a petitioner must show that "'some objective external factor impeded his ability to comply'" with the relevant procedural rule.  *Pinero v. Greiner*,

---

another CPL Motion.  *See* Resp. Mem. at p. 21 n.15.  This Court disagrees.  The prior testimony which Toland claims could have been used by counsel to impeach that witness when she testified at Toland's criminal trial was provided by Dr. Wolf in 1996.  *E.g.*, Supporting Mem. at p. 16 (noting that "[w]hen Dr. Wolf testified regarding the Dempster case in 1996, she could not ... state any cause of death of Ms. Dempster").  Nothing before the Court suggests that Toland was not aware, or could not have with due diligence become aware, of Dr. Wolf's 1996 testimony prior to the time at which he filed his December, 2002 CPL Motion.

No. 01 CIV. 9991, 2007 WL 2712496, at *21 (S.D.N.Y. Sept. 17, 2007) (quoting *Restrepo v. Kelly*, 178 F.3d 634, 638-39 (2d Cir. 1999)); *see also Wilson v. Supt., Attica Corr. Facility*, No. 00-CV-0767, 2003 WL 22765351, at *3 (N.D.N.Y. Nov. 24, 2003) (Sharpe, J.) (citing *Coleman*, 501 U.S. at 753).  Examples of such "external factors" include "interference by officials," the ineffective assistance of counsel, or proof that "the factual or legal basis for a claim was not reasonably available" at the time of petitioner's trial or on direct appeal.  *Wilson*, 2003 WL 22765351, at *3 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)); *see Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994) (citing *Murray*); *United States v. Helmsley*, 985 F.2d 1202, 1206 (2d Cir. 1993).

     Toland does not attempt to establish legal cause for his default in this action.  *See* Petition; Traverse.  Since he has not alleged – must less established – cause for his failure to fully exhaust these theories,[13] this Court need not decide whether he suffered prejudice, because federal habeas relief is unavailable as to procedurally barred claims under this limited exception permitting review of procedurally forfeited claims unless **both** cause and prejudice is demonstrated.  *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *D'Alessandro v. Fischer*, No. 01 CIV. 2551, 2005 WL 3159674, at *9 n.10 (S.D.N.Y. Nov. 28, 2005) ("[a]s Petitioner has not shown cause for his default, this Court need not even reach the question of whether Petitioner can show prejudice") (citing *Stepney*); *Moore v. Greiner*, No. 02 CIV.6122, 2005 WL 2665667, at *12 (S.D.N.Y. Oct. 19, 2005) (citing *Stepney*); *Lutes v. Ricks*, No. 02-CV-1043, 2005 WL 2180467, at *9 (N.D.N.Y. Sept. 9, 2005) (McAvoy, S.J.) (citing *Stepney*) (other citation

---

[13]     The petitioner bears the burden of demonstrating cause for his procedural default and resulting prejudice.  *See Simpson v. Portuondo*,  01CIV.8744, 2002 WL 31045862, at *5 (S.D.N.Y. June 4, 2002).

omitted); *Pou v. Keane*, 977 F.Supp. 577, 581 (N.D.N.Y. 1997) (Kahn, J.).

This Court's finding that Toland has failed to establish cause for his default does not necessarily preclude this Court from considering his procedurally forfeited claims, however, because, as noted above, a federal court may nonetheless properly invoke habeas review as to such claims if the court is convinced of the petitioner's actual innocence. On this question, however, the Second Circuit has noted that:

> [T]he fundamental miscarriage of justice exception is "extremely rare" and should be applied only in "the extraordinary cases." *Schlup v. Delo*, 513 U.S. 298, 321-22 (1995); .... ""[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 ... (1998). "To establish actual innocence, [a] petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" *Id.* (citing *Schlup*, 513 U.S. [at] 327-28 ... (some internal citations and quotation marks omitted).

*Sweet v. Bennett*, 353 F.3d 135, 142 (2d Cir. 2003); *see also D'Alessandro*, 2005 WL 3159674, at *8; *Marengo v. Conway*, 342 F.Supp.2d 222, 228 (S.D.N.Y. 2004). As noted above, Toland claims that he is actually innocent of the crime of which he was convicted. *See* Traverse at p. 8; *see also* Petition at ¶ 12(11). Additionally, in his Traverse, Toland asserts that "it would be a severe miscarriage of justice if all of petitioner's claims are not reviewed by this Court," notwithstanding his failure to exhaust, because he "is an innocent man who has been convicted of a crime that he did not commit." Traverse at p. 8.

However, as is discussed more fully *post* in conjunction with Toland's claim that there was legally insufficient evidence adduced at trial to sustain the conviction challenged herein, this Court finds that there was more than sufficient evidence presented at trial which established Toland's guilt of the second degree murder charge. Since that finding necessarily

precludes a determination that Toland is actually innocent of the murder conviction, this Court

therefore denies the above unexhausted claims as procedurally forfeited.

    **C.**    <u>**Remaining Claims**</u>

        **1.**    <u>**Standard of Review**</u>

     The April, 1996 enactment of the AEDPA brought about significant new limitations on

the power of a federal court to grant habeas relief to a state prisoner under 28 U.S.C. § 2254.

In discussing this deferential standard, the Second Circuit noted in *Rodriguez v. Miller*, 439

F.3d 68 (2d Cir. 2006) that:

> a federal court may award habeas corpus relief with respect to a
> claim adjudicated on the merits in state court only if the
> adjudication resulted in an outcome that: (1) was "contrary to, or
> involved an unreasonable application of, clearly established
> Federal law, as determined by the Supreme Court of the United
> States"; or (2) was "based on an unreasonable determination of
> the facts in light of the evidence presented in the State court
> proceeding."

*Id.* at 73 (quoting 28 U.S.C. § 2254(d));[14] *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d

Cir. 2005); *Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003); *Boyette v. LeFevre*, 246

F.3d 76, 88 (2d Cir. 2001). In providing guidance concerning application of this test, the

Second Circuit has recently noted that:

> [A] state court's decision is "contrary to" clearly established
> federal law if it contradicts Supreme Court precedent on the
> application of a legal rule, or addresses a set of facts "materially
> indistinguishable" from a Supreme Court decision but
> nevertheless comes to a different conclusion than the Court did.
> [*Williams*, 529 U.S.] at 405-06; *Loliscio v. Goord*, 263 F.3d 178,

---

[14]     It should be noted that "clearly established federal law" in this context "refers
only to the holdings of the Supreme Court."  *Rodriguez v. Miller*, 499 F.3d 136, 140 (2d Cir.
2007) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

> 184 (2d Cir. 2001).... [A] state court's decision is an
> "unreasonable application of" clearly established federal law if
> the state court "identifies the correct governing legal principle
> from [the Supreme] Court's decisions but unreasonably applies
> that principle to the facts" of the case before it. *Williams*, 529
> U.S. at 413.

*Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007); *see also Williams v. Artuz*, 237 F.3d

147, 152 (2d Cir. 2001) (citing *Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

Significantly, a federal court engaged in habeas review is not charged with determining

whether the state court's determination was merely incorrect or erroneous, but instead whether

such determination was "objectively unreasonable." *Williams*, 529 U.S. at 409; *see also Sellan*

*v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001). Objectively unreasonable in this context has

been interpreted as meaning that "'some increment of incorrectness beyond error is required'"

for the habeas court to properly grant the application. *Earley v. Murray*, 451 F.3d 71, 74 (2d

Cir. 2006) (quoting *Francis S.*, 221 F.3d at 111).

### 2.    Review of Remaining Claims

#### a.    Ineffective Assistance of Trial Counsel

##### i.    Clearly Established Supreme Court Precedent

The Sixth Amendment to the United States Constitution provides that: "[i]n all criminal

prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his

defence." U.S. Const., Amend. VI. To establish a violation of this right to the effective

assistance of counsel, a habeas petitioner must show both: i) that counsel's representation fell

below an objective standard of reasonableness, measured in the light of the prevailing

professional norms; and ii) resulting prejudice that is, a reasonable probability that, but for

counsel's unprofessional performance, the outcome of the proceeding would have been

different.  *Strickland v. Washington*, 466 U.S. 668, 688-90 (1984); *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) ("the legal principles that govern claims of ineffective assistance of counsel" were established in *Strickland*).

**ii.      Contrary To, or Unreasonable Application of, Clearly Established Supreme Court Precedent**

The Third Department found the theories Toland asserted in support of his ineffective assistance claim to be without merit.  *See Toland*, 2 A.D.3d at 1057.  This Court must therefore ascertain whether that determination is either contrary to, or represents an unreasonable application of, *Strickland* and its progeny.

In her appellate brief, counsel argued that an actual conflict of interest existed between Toland and his trial attorney because counsel "was being threatened with prosecution while at the same time the trial was proceeding."  *See* App. Br. at p. 26.  Since trial counsel's "personal interests had ... been placed in direct opposition to [Toland's] interests," *id.*, appellate counsel argued that trial counsel's application for a mistrial should have been granted.  *Id.*

The record reflects that during the criminal trial below, the prosecutor observed a man whom he believed to be Toland's father sitting in the courtroom.  Trial Tr. at pp. 552-53.  The prosecution prepared a subpoena to serve him, however by the time the subpoena was prepared, the man had left the courthouse.  *Id.* at p. 553, 628.[15]  Since defense counsel had spoken briefly with the individual believed to be Toland's father before that man left the courthouse, *see id.* at p. 975, the prosecutor requested that the court direct defense counsel to disclose what he knew,

---

[15]      The prosecution wished to subpoena Toland's father because he was in possession of a recording of  telephone conversation between he and Toland in which Toland made statements that tended to incriminate himself.  Trial Tr. at pp. 629-30.

20

if anything, about the whereabouts of petitioner's father. *Id.* at p. 631. After reminding

defense counsel about the disciplinary rule which allows a defense attorney to reveal a

confidence when it is required by a court order, defense counsel stated that he did not wish to

respond to the prosecutor's question because counsel believed any response would be governed

by and subject to the attorney-client privilege. *Id.* at p. 632. Although the County Court

nevertheless directed defense counsel to disclose the whereabouts of petitioner's father, defense

counsel refused to do so, again citing the attorney-client privilege and also asserting that the

prosecutor had threatened to prosecute counsel for perjury and witness tampering. *Id.* at pp.

632-33. In response, the prosecutor declared that he would not prosecute defense counsel if he

would comply with the court's directive. *Id.* at p. 635.

The following day, after an off-the record discussion in chambers, defense counsel

stated on the record that petitioner had not authorized him to respond to the prosecutor's

inquiries, statements or questions. *Id.* at p. 761. Defense counsel then advised Judge Catena

that counsel believed he labored under a conflict of interest because he was being threatened

with prosecution for tampering with a witness, and, as a result, his interests were in direct

opposition to those of his client. *Id.* at p. 761.[16] Counsel then moved for a mistrial, *id.* at p.

762, which application was opposed by the prosecution, *id.*, and ultimately denied by the

County Court. *Id.* Just prior to the time at which the jury was to return to the courtroom,

defense counsel stated that he was not prepared to proceed, that he needed an attorney to

---

[16]     Specifically, counsel asserted that the only way he could avoid possible
criminal prosecution, or an ethics inquiry regarding his conduct, was to disclose to the court
and the prosecution information that his client had specifically directed counsel not to
disclose. Trial Tr. at pp. 761-62.

21

represent him, and that he was renewing his motion for a mistrial because he labored under a conflict of interest. *Id.* at p. 769.  In response, the District Attorney reiterated the fact that he did not intend to prosecute defense counsel, particularly if the prosecution ultimately succeeded in locating Toland's father. *Id.* at p. 770.  The court denied counsel's second mistrial application. *Id.* at p. 771.

In denying the aspect of Toland's appeal which related to the claimed conflict of interest between defense counsel and Toland, the Appellate Division opined that there was "no nexus between the conflict of interest claimed by defense counsel because of his perceived personal jeopardy and deprivation of [Toland's] right to a fair trial." *Toland*, 2 A.D.3d at 1055. That court further determined that the record "clearly establish[ed]" that the claimed conflict "did not impair counsel's ability to fully and adequately participate in the trial." *Id.*  This Court must therefore ascertain whether that finding is either contrary to, or represents an unreasonable application of, relevant, clearly established Supreme Court precedent.

A criminal defendant's Sixth Amendment right to counsel includes a right to conflict-free representation. *See Wood v. Georgia*, 450 U.S. 261, 271 (1981) ("Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest"); *see also Eisemann v. Herbert*, 401 F.3d 102, 107 (2d Cir. 2005) (citations omitted).  The Second Circuit has noted that there are three levels of conflicts of interest to be considered in evaluating a Sixth Amendment claim alleging such a conflict:  a) a *per se* conflict, which does not require a showing of prejudice; b) an actual conflict of interest that carries a presumption of prejudice; and c) a potential conflict of interest that requires a finding of both deficient performance by

counsel and prejudice.  *See United States v. John Doe No. 1*, 272 F.3d 116, 125 (2d Cir. 2001) (citation omitted); *see also Lora v. West*, No. 04CIV.1902, 2005 WL 372295, at *13 (S.D.N.Y. Feb 17, 2005) (citing *John Doe*).

A "*per se*" conflict of interest exists only where trial counsel is not authorized to practice law, *see Solina v. United States*, 709 F.2d 160, 164 (2d Cir. 1983), or is implicated in the very crime for which his client is on trial, *see United States v. Cancilla*, 725 F.2d 867, 870 (2d Cir. 1984); *see generally United States v. Williams*, 372 F.3d 96, 103 (2d Cir. 2004).  Since Toland has not established the existence of either of these circumstances with respect to defense counsel's representation of him, no *per se* conflict existed.[17]

In order to prove that his attorney was under an actual conflict of interest during the course of his representation, Toland must demonstrate the existence of three distinct factors. *Armienti v. United States*, 234 F.3d 820, 824 (2d Cir. 2000); *United States v. Moree*, 220 F.3d 65, 69 (2d Cir. 2000); *United States v. Berger*, 188 F.Supp.2d 307, 333 (S.D.N.Y. 2002).  First, petitioner must establish that an "actual conflict of interest" existed, i.e., that "the attorney's and defendant's interests diverge[d] with respect to a material factual or legal issue or to a course of action."  *Armienti*, 234 F.3d at 824 (citing *Winkler v. Keane*, 7 F.3d 304, 307 (2d Cir. 1993)); *Berger*, 188 F.Supp.2d at 333.  He must then establish "adverse effect" as a result of such conflict by demonstrating the existence of "some 'plausible alternative defense strategy'" not pursued by his counsel.  *Armienti*, 234 F.3d at 824 (citing *United States v. Levy*, 25 F.3d 146, 157 (2d Cir. 1994)) (other citation omitted).  Finally, Toland must show "that the 'alternative

---

[17]     The Second Circuit has consistently refused to extend the *per se* rule beyond these two limited situations.  *See United States v. Rondon*, 204 F.3d 376, 379-80 (2d Cir. 2000) (collecting cases).

defense strategy was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.'" *Armienti*, 234 F.3d at 824 (citing *Levy*, 25 F.3d at 157) (other citation omitted).

Since counsel expressed his belief that he would be subject to imprisonment and/or disbarment if he were found to be in contempt of court by refusing to comply with the County Court's direction to disclose to the prosecution any information in counsel's possession that related to the whereabouts of Toland's father, *see* Trial Tr. at p. 761, this Court will assume, *arguendo*, that Toland has established that his interests and those of his attorney diverged with respect to a course of action that arose in the criminal matter below.

However, Toland has not established that as a result of such conflict, his counsel failed to pursue some plausible alternative defense strategy.  Specifically, the County Court noted that it would not hold defense counsel in contempt for failing to comply with its order to counsel to disclose information in his possession relating to Toland's father; Judge Catena declared that "the Court is not going to delay this matter so we can ... hold you in contempt.  That's contrary to the whole reason for asking you for that information to begin with."  *See* Trial Tr. at p. 763.[18] Nothing in the trial transcript following the above-described exchange suggests that defense counsel's representation of Toland was impacted, in any way, by the matter relating to Toland's father.  This Court therefore adopts the Third Department's determination that: "[t]he record clearly establishes that [the claimed conflict] did not impair counsel's ability to fully and adequately participate in the trial."  *See Toland*, 2 A.D.3d at 1055.

---

[18]     At a subsequent contempt hearing, Judge Catena specifically declined to hold counsel in contempt.  *See* App. at p. A343h.

Finally, to establish that a potential conflict existed between Toland and his trial

counsel, petitioner must demonstrate "both deficient performance by counsel and prejudice,

under the standard established in *Strickland*."  *See John Doe*, 272 F.3d at 125 (citations

omitted).  Petitioner has not established either of these prongs.  As noted above, petitioner has

not alleged – much less demonstrated – that defense counsel's performance was deficient

because of the claimed conflict.  Toland has similarly offered no proof which indicates that he

was prejudiced, in any way, by trial counsel's purported conflict.  Thus, he is not entitled to

habeas intervention on this theory.

Petitioner next asserts that his trial counsel improperly failed to interview and call

witnesses whom Toland asserts would have provided testimony beneficial to his defense.  *See*

Petition at ¶¶ 12(2)(b), (j).  In a related claim, Toland contends that counsel wrongfully

refrained from offering exculpatory evidence at trial.  *Id.* at ¶ 12(2)(j).  In denying this

appellate claim, the Appellate Division opined that counsel's "failure to interview and

produce" the witnesses referenced by Toland did not amount to ineffective assistance,

particularly in light of the fact that the counsel had no reason to suspect that such witnesses

would be relevant to the defense until Fernandez testified for the prosecution.  *See Toland*, 2

A.D.3d at 1056.

The record establishes that Toland was unaware of the identity of Fernandez until he

actually testified at trial.  *See* December, 2002 CPL Motion at p. 6 ("[t]he defendant did not

know who the witness was until the day [he] physically walked into the courtroom to testify in

this matter").   At that time, Toland "told counsel the names of several witnesses" whom

Toland claimed would be beneficial to his defense.  *Id.*  However, the trial transcript reveals

that the prosecution rested the day after Fernandez testified.  *See* Trial Tr. at pp. 1159-97, 1335. That same day, the trial counsel began offering evidence in support of Toland's defense to the charges against him.  The foregoing chronology establishes that the Appellate Division properly determined that "[g]iven the time constraints of the trial," counsel's failure to interview those individuals did not constitute ineffective assistance.  *Toland*, 2 A.D.3d at 1056.

Toland next asserts that at the time of trial, defense counsel was in possession of a police report created by Detective Michael J. Villa in which that detective noted that soon after Dempster went missing, an individual named Andre Simms, who had been interviewed by law enforcement agents about her disappearance, declared:  "forget Paulette, she's fucking hog-tied in a field in Schenectady."  Supporting Mem. at p. 12.  Around that same time, Simms also purportedly volunteered that another individual, Richard Westly, had informed Simms that Dempster had been "hog-tied" and was dead.  *Id.*  Petitioner asserts that defense counsel's failure to question Detective Villa about that report – and the potential suspects in the disappearance of Dempster named therein – amounted to ineffective assistance.  *Id.* at pp. 12-13.

The report to which petitioner refers reflects that Simms informed law enforcement that while he was "getting high" at a party, he asked a group of "7 or 8 people ... what's up with Paulette," to which someone responded she was "hog-tied in a field in Schenectady."  *See* Petitioner's Exhibits in Support of Petition (attached to Dkt. No. 10) at p. 3.  However, Simms declared that he did not "know who made the statement," but volunteered that "Toland [knew] the guys that picked her up."  *Id.*  In that same report, an individual who "wish[ed] to remain anonymous" advised Villa that Westly was the individual who knew that Dempster was dead.

*Id.* at p. 4.

The above referenced report contains little substantive information regarding Dempster and instead contains hearsay statements – some of which were made by unknown individuals – as well as incriminating information relating to Toland.  Furthermore, the document did not accurately describe the condition of the victim's body at the crime scene or the city in which the body was located.  Therefore, counsel cannot be found to have rendered ineffective assistance by failing to question Villa about the contents of that report.

Toland also faults trial counsel for not utilizing "material evidence" – an affidavit executed by "a witness" which "pointed to another individual who had <u>personal</u> knowledge of the death, and whereabouts, of the victim ... before the victim's remains were discovered" – at trial.  *See* Petition at ¶¶12(2)(c), (f) (emphasis in original).  However, Toland himself concedes that defense counsel did not discover this alleged information until "after [the] verdict."  *See* Petition at ¶ 12(2)(f).  Since there are no allegations – much less proof – that counsel was or should have been aware of this claimed evidence prior to that time, it is unclear to this Court how counsel's failure to refer to that evidence during the course of Toland's trial can be found to have been objectively unreasonable.  Moreover, Toland has not provided this Court with:  i) the "witness's" name; ii) the name of the individual to whom that "witness" referred in his/her affidavit; or iii) a copy of the affidavit upon which this claim is based.  Petitioner's failure to provide record support for this aspect of his federal habeas petition represents a failure on his part to shoulder his burden of proof in this action.  *See Whitaker v. Meachum*, 123 F.3d 714, 716 (2d Cir. 1997) (petitioner bears the burden of proving in his habeas petition that his constitutional rights were violated in the state court proceeding) (citing *Walker v. Johnston*,

312 U.S. 275, 286 (1941)).

The final exhausted claim regarding trial counsel's performance,[19] asserts that Toland's attorney wrongfully failed to request a missing witness charge relating to three potential witnesses for the prosecution.  *See* Petition at ¶ 12(2)(k).  Though not clearly discussed in the papers Toland filed in conjunction with this action, he asserted in his December, 2002 CPL Motion that an individual named B. Quakenbush had supervised Toland while he was at the Montgomery County Jail infirmary, and that she was aware that Toland and the victim had a relationship of "friendship, and friendship only."  December, 2002 CPL Motion at p. 13.  M. Brownell, Quakenbush's supervisor and another individual whom Toland claims the prosecution should have called as a witness, is alleged by Toland to have also known of his relationship with the victim.  Finally, petitioner asserts that C. Sullivan, a New York State police investigator and polygraph examiner who had examined Toland prior to trial, was not called by the prosecution and therefore his testimony "would have been favorable to the defendant."  *Id.* at p. 14.

"A missing witness charge allows the jury to draw an adverse inference that the testimony of uncalled witnesses would have been unfavorable to the party that declined to call them."  *Glover v. Bennett*, No. 98-CV-0607, 2001 WL 1862807, at *5 (N.D.N.Y. Feb. 26, 2001) (Sharpe, M.J.) (citation omitted), *adopted*, *Glover v. Bennett*, No. 98-CV-0607 (N.D.N.Y. Sept. 27, 2001) (Mordue, J.) (Dkt. No. 23), *aff'd without op.*, *Glover v. Bennett*, No. 01-2633 (2d Cir. Mar. 4, 2003) (No. 98-CV-0607, Dkt. No. 30), *cert. denied*, *Glover v. Bennett*

---

[19]    The Court addresses Toland's claim that the prosecutor wrongfully withheld documents from defense counsel, *see* Petition at ¶ 12(2)(i), in conjunction with his claim which alleges prosecutorial misconduct.

539 U.S. 907 (2003).  "[S]uch a charge is appropriate only when a party has within its control a material witness who would naturally be expected to testify favorably to that party, but does not." *Funderbird-Day v. Artuz*, No. 97 CIV. 7786,  2002 WL 31427345, at *7 (S.D.N.Y. Oct. 29, 2002).  A missing witness charge is inappropriate, however, where the potential witness's testimony merely would have been cumulative of other testimony.  *See People v. Macana*, 84 N.Y.2d 173, 180 (1994); *People v. Tolanda*, 261 A.D.2d 967, 967 (4th Dept. 1999).

The evidence presented at trial established that the victim and Toland were acquainted. *See* Trial Tr. at pp. 583-84.  It is therefore unclear to this Court how the testimony of either Quakenbush or Brownell regarding the fact that Dempster and Toland were friends would not have been duplicative of other evidence already received at trial.  Furthermore, petitioner's claim that the testimony of police investigator Sullivan "would have been favorable to the defendant,"  *see* December, 2002 CPL Motion at p. 14, is based upon nothing other than mere conjecture.  Specifically, petitioner has not pointed to any documents, memoranda or other potential evidence which substantiates this claim.  Unfortunately for Toland, federal habeas relief cannot be granted upon claims that are rooted in speculation.  *Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (federal courts should not grant "habeas relief on the basis of little more than speculation with slight support"); *Osinoiki v. Riley*, CV-90-2097, 1990 WL 152540, at *2-3 (E.D.N.Y. Sept. 28, 1990) (conclusory statements based on speculation "are inadequate to satisfy petitioner's burden") (citing *Machibroda v. United States*, 368 U.S. 487, 495 (1962)); *Williams*, 2005 WL 2179423, at *16.  Since petitioner has not established that a missing witness charge was appropriate in the related criminal matter, he has necessarily failed to demonstrate that counsel's failure to request such an instruction constituted objectively

unreasonable conduct.

In sum, petitioner has not established that the Third Department's decision denying his ineffective assistance claim, *see Toland*, 2 A.D.3d at 1056-57, is either contrary to, or represents an unreasonable application of, *Strickland* and its progeny. This Court therefore denies the exhausted claims asserted by Toland in this ground for relief.

### b.    <u>Sufficiency of Evidence</u>

In his third ground, Toland claims that the evidence adduced at trial "was legally insufficient to establish every element" of his second degree murder conviction. *See* Petition at ¶ 12(3). In another claim that touches upon the sufficiency of the evidence, Toland asserts that the testimony of Francisco Fernandez was "incredible as a matter of law" and did not establish Toland's guilt of the crimes charged beyond a reasonable doubt. *Id.* at ¶ 12(5).

### i.    <u>Clearly Established Supreme Court Precedent</u>

The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime(s) with which he is charged. *See Fiore v. White*, 531 U.S. 225, 228-29 (2001); *Jackson v. Virginia*, 443 U.S. 307, 315 (1979); *In re Winship*, 397 U.S. 358, 364 (1970). This inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993). A habeas petitioner claiming that there was insufficient evidence supporting the conviction is entitled to relief under 28 U.S.C. § 2254 only if it is found "that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 324; *Schlup*, 513

U.S. at 323; *United States v. Powell*, 469 U.S. 57, 67, (1984) (citing *Jackson*) (other citations

omitted).  The reviewing court is required to consider the evidence in the light most favorable

to the prosecution, and draw all inferences in its favor.  *Jackson*, 443 U.S. at 319.

<strong>ii.    Contrary To, or Unreasonable Application of, Clearly Established Supreme Court Precedent</strong>

The Second Circuit has observed that a petitioner bears a "very heavy burden" when

seeking to invalidate a conviction based upon a claim of insufficient evidence.  *Ponnapula v.*

*Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) (citing *Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir.

1993)); *see also Ramey v. District 141, Intern. Ass'n of Machinists and Aerospace*, 378 F.3d

269, 283 (2d Cir. 2004) (citation omitted); *Clark v. Irvin*, 844 F.Supp. 899, 904

(N.D.N.Y.1994) (Hurd, M.J.).  The appropriate inquiry on habeas review is:

> whether the jury, drawing reasonable inferences from the
> evidence, may fairly and logically have concluded that the
> defendant was guilty beyond a reasonable doubt ... view[ing] the
> evidence in the light most favorable to the government, and
> constru[ing] all permissible inferences in its favor.

*Van Stuyvesant*, 2007 WL 2584775, at *21 (internal quotation and citation omitted); *see also*;

*Ferguson v. Walker*, No. 00CIV1356, 2001 WL 869615, at *4 & n. 4 (S.D.N.Y. Aug. 2, 2001)

(Peck, M.J.) (quoting *United States v. Carson*, 702 F.2d 351, 361 (2d Cir. 1983) (citations

omitted)), *adopted*, *Ferguson v. Walker*, 2002 WL 31246533 (S.D.N.Y. Oct. 7, 2002).

Additionally, "[w]hen considering the sufficiency of the evidence of a state conviction, '[a]

federal court must look to state law to determine the elements of the crime.'"  *Ponnapula*, 297

F.3d at 179 (quoting *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999)); *see also*

*Fama*, 235 F.3d at 811 (citing *Quartararo*); *Flowers v. Fisher*, No. 03 CV 5405, 2006 WL

3050876, at *8 (E.D.N.Y. Oct. 23, 2006) (citations omitted); *Hill v. Miller*, No. 03-CV-1738,

31

2005 WL 807044, at *2 (E.D.N.Y. Apr. 8, 2005) (quoting *Ponnapula*).  This Court therefore briefly reviews the elements of the crime of intentional murder in New York.

N.Y. Penal Law § 125.25 provides, in relevant part, that a person is guilty of second degree intentional murder when:  "[w]ith intent to cause the death of another person, he causes the death of such person or of a third person."  *See* N.Y. Penal Law § 125.25(1); *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996).

The evidence adduced at trial established that:  i) Dempster was last seen alive in the company of Toland on September 13, 1994; ii) she was discovered deceased approximately one year later wearing the same clothes she was wearing when she was with him on September 13, 1994; iii) a flashlight from Toland's car was found near the body of the victim; and iv) Dempster's cause of death was a homicide, most likely due to strangulation.  Additionally, as noted above, Toland made incriminating statements to Fernandez in which he admitted to killing the victim.  Although petitioner now argues that Fernandez's testimony is incredible as a matter of law, *see* Petition at ¶ 12(5), it has been observed that the trial testimony of a witness may only properly be considered incredible as a matter of law "where the witness testifies as to facts that [he or she] could not have possibly observed or events that could not have occurred under the laws of nature."  *Simpson*, 2002 WL 31045862, at *9 (citations omitted).  Absent those factors – which are clearly not present in the case *sub judice*, a habeas court's finding that a witness's testimony was incredible as a matter of law "would require th[e] Court to usurp the function of the jury in making credibility determinations which it is foreclosed from doing" in federal habeas proceedings.  *Ward v. Herbert*, 509 F.Supp.2d 253, 265 (W.D.N.Y. 2007) (citations omitted).  The Court therefore declines petitioner's invitation to find Fernandez's

32

testimony incredible as a matter of law.

In sum, the trial evidence regarding Toland's interaction with the victim the day she disappeared, the physical evidence found at the crime scene linking Toland to Dempster, the cause of the victim's death as well as Toland's incriminating statements to Fernandez, viewed collectively, are more than sufficient to establish that Toland intentionally caused Dempster's death. Thus, the Third Department's decision denying Toland's appellate challenge regarding the sufficiency of evidence offered against him at trial, *see Toland*, 2 A.D.3d at 1054, is neither contrary to, nor represents an unreasonable application of, *Jackson* and its progeny. The Court therefore denies this ground for relief.

c.      **Procedural Errors Committed by County Court**

In his fourth ground, Toland claims that the trial court erred when it denied his CPL § 330 Motion – and his December, 2002 CPL Motion – without any hearings. *See* Petition at ¶ 12(4).[20] Petitioner also claims that Judge Catena erred when he converted the CPL § 330 Motion into a motion to vacate under CPL § 440.10 "without a full, and fair hearing or due consideration." *See* Petition at ¶ 12(8).

The County Court's decision to convert Toland's CPL § 330 Motion into one brought pursuant to CPL § 440.10, as well as that court's failure to schedule hearings before addressing the merits of the collateral challenges he filed with that court, were clearly procedural decisions of the County Court. Claimed procedural errors in state post-conviction proceedings, however,

---

[20]      In addition to this alleged procedural error of the County Court, petitioner also asserted substantive claims in the above-cited state-court collateral challenges to his conviction. Those substantive claims, however, are raised by Toland in other grounds for relief in his petition and are therefore addressed by this Court in its analysis of those other grounds.

"are not cognizable on federal habeas review.'"  *Velazquez v. Poole*, No. 04-CV-0478, 2007

WL 3240550, at *40 (E.D.N.Y. Oct. 30, 2007) (quoting *Savinon v. Mazucca*, No. 04 CV 1589,

2005 WL 2548032, at *37-38 (S.D.N.Y. Oct. 12, 2005)); *see also Dexter v. Artus*, No.

01-CV-237, 2007 WL 963204, at *10 (N.D.N.Y. Mar. 27, 2007) (McAvoy, J.) (citations

omitted); *Manning v. Fischer*, No. 06 CIV. 2052, 2006 WL 3408575, at *8 (S.D.N.Y. Nov. 22,

2006) (citations omitted).  This Court therefore denies these two grounds because they do not

assert claims upon which federal habeas relief may be granted.

### d.    <u>Admission of Audio Tape Evidence</u>

Toland next argues that he is entitled to habeas intervention because Judge Catena

improperly allowed a tape recording of a telephone call that was made between Toland and his

father into evidence.  *See* Petition at ¶ 12(6).[21]

The Appellate Division found Toland's appellate challenge regarding the admissibility

of the audiotape evidence, which was asserted by counsel in his appellate brief, *see* App. Br. at

p. 27, to be "without merit."  *See Toland*, 2 A.D.3d at 1057.

Historically, when evaluating convictions in the face of collateral habeas challenges

alleging error on the part of a trial court, habeas courts have inquired into whether the trial

court's error had a "'substantial and injurious effect or influence'" in determining the verdict in

the criminal case.  *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (citing *Kotteakos v.*

*United States*, 328 U.S. 750, 776 (1946)) (other citation omitted).

Following the AEDPA, however, it became an "open question" whether the applicable

---

[21]      The transcript of the recording of that telephone call reflects that during such
call, Toland made incriminating statements regarding the flashlight found at the scene of the
crime.  *See* Dkt. No. 21, Exh. A.

34

test on federal habeas review of a state court conviction should remain the one set forth in

*Brecht*, or instead focus upon a consideration of whether the state court's decision was contrary

to, or involved an unreasonable application of, *Chapman v. California*, 386 U.S. 18 (1967).[22]

*See Benn v. Greiner*, 402 F.3d 100, 105 (2d Cir. 2005) (citation omitted); *Harvall v. Phillips*,

No. 03-CV-2968, 2005 WL 2095725, at *8 (E.D.N.Y. Aug. 30, 2005).

　　　　In *Gutierrez v. McGinnis*, 389 F.3d 300 (2d Cir. 2004), the Second Circuit resolved one

aspect of this question when it determined that when a state court had explicitly conducted

harmless error review of a claimed constitutional error, a federal habeas court must evaluate

whether the state court's decision reflected an unreasonable application of *Chapman*.  *See*

*Gutierrez*, 389 F.3d at 306; *see also Zappulla v. New York*, 391 F.3d 462, 467 (2d Cir. 2004).

More recently, in *Fry v. Pliler*, ___U.S. ___, 127 S.Ct. 2321 (2007), the Supreme Court

undertook certiorari review to resolve the issue of "whether *Brecht* or *Chapman* provides the

appropriate standard of review when constitutional error in a state-court trial is first recognized

by a federal court."  *Fry*, ___ U.S. ___, 127 S.Ct. at 2327.  Addressing the issue, the *Fry* Court

held that:

> in § 2254 proceedings a court must assess the prejudicial impact
> of constitutional error in a state-court criminal trial under the
> "substantial and injurious effect" standard set forth in *Brecht*, 507
> U.S. 619, whether or not the state appellate court recognized the
> error and reviewed it for harmlessness under the "harmless
> beyond a reasonable doubt" standard set forth in *Chapman*, 386
> U.S. 18.

*Fry*, ___ U.S. at ___, 127 S.Ct. at 2327 (emphasis added).

---

[22]　　　In *Chapman*, the Supreme Court held that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.*, 386 U.S. at 24.

35

Based upon the Supreme Court's decision in *Fry*, this Court will review petitioner's claim challenging the admissibility of the audiotape evidence utilizing the standard articulated in *Brecht*, and ascertain whether any claimed constitutional error committed by the County Court had a substantial and injurious effect or influence in determining the jury's verdict.[23] *E.g.*, *Rice v. Senkowski*, No. 04-CV-335, 2007 WL 2789504, at *7 (N.D.N.Y. Sept. 24, 2007) (Kahn, J., adopting Report-Recommendation of Magistrate Judge David E. Peebles).

In support of his claim, petitioner argues that the admission of the audiotape evidence, which Toland asserts was inadmissible hearsay, violated Toland's right of confrontation and to cross-examine witnesses against him.  *See* Petition at ¶ 12(6).

The Confrontation Clause of the United States Constitution provides that:  "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."  *See* U.S. Const., amend VI.   The protections provided by the Sixth Amendment are not so broad, however, so as to necessarily exclude "the admission of certain hearsay statements against a defendant despite the defendant's inability to confront the declarant at trial."  *Maryland v. Craig*, 497 U.S. 836, 847-848 (1990).  Specifically, the Supreme Court has determined that hearsay statements are admissible, notwithstanding the defendant's inability to confront the declarant, if:  1) the declarant is "unavailable" to testify; and 2) the statement "bears adequate 'indicia of reliability.'"  *Ohio v. Roberts*, 448 U.S. 56, 66 (1980) (quoting

---

[23]   It should be noted that the *Fry* Court had assumed, without deciding, that the state court had committed a constitutional error.  *See* ___ U.S. at ___, n.1, 127 S.Ct. at 2325 n.1.  Whether the holding in *Fry*, and therefore use of the *Brecht* standard, is necessarily applicable in cases where no error of constitutional proportion is found to have been committed by the trial court appears to still remain an open question in the context of federal habeas jurisprudence.

*Mancusi v. Stubbs*, 408 U.S. 204, 213 (1972)).

In the criminal matter below, Toland's father was unavailable to testify because, as noted above, the prosecution was unable to serve him with a subpoena to compel him to testify.

As to the second *Roberts* factor, the County Court concluded that the tape could be played to the jury because the statements contained thereon were admissions of Toland. *See* Trial Tr. at pp. 1197-1203. In considering whether those admitted hearsay statements possessed an adequate "indicia of reliability," this Court notes that a hearsay statement is presumptively reliable if it falls within a "firmly rooted" hearsay exception. *See Roberts*, 448 U.S. at 66. A hearsay exception is "firmly rooted" in this context if it: "rest[s] upon such solid foundations that admission of virtually any evidence within [it] comports with the 'substance of constitutional protection.'" *Id.* Evidence admitted under such an exception thus is presumed to be "so trustworthy that adversarial testing would add little to its reliability." *Idaho v. Wright*, 497 U.S. 805, 821 (1990). Where the proposed evidence does not fall within a firmly rooted hearsay exception, the proponent of such evidence must establish that such potential evidence bears a "particularized guarantee[] of trustworthiness" for a court to properly allow the evidence to be offered against the defendant. *Roberts*, 448 U.S. at 66 (footnote omitted).

New York's Court of Appeals has suggested that the "statements against penal interest" exception to the hearsay rule is sufficiently rooted in New York jurisprudence so as to satisfy the "reliability requirement" of the Confrontation Clause. *See People v. James*, 93 N.Y.2d 620, 642 (1999). Therefore, Toland's statement in which he accurately described the flashlight found at the scene of the homicide as both being black and having a suction cup attached thereto, *e.g.* Dkt. No. 21, Exh. A, despite the fact that he had not seen that evidence, was

properly admitted against Toland.[24]  Since the County Court's ruling was not erroneous, any claim that Judge Catena erred in allowing the recording's admission into evidence, and that such admission had a substantial and injurious effect or influence in determining the jury's verdict, is necessarily without substance.[25]

### e.    Denial of Mistrial Application

Petitioner also faults Judge Catena because he denied defense counsel's motion for a mistrial.  *See* Petition at ¶ 12(7).

The record establishes that after Judge Catena denied Toland's request to be relieved as counsel due to the purported conflict of interest noted above, trial counsel moved for a mistrial. Trial Tr. at p. 769.  In support of that application, defense counsel declared that a mistrial was warranted because Toland needed new counsel in light of the fact that his current counsel was

---

[24]    Even if the "declaration against self-interest" exception to the hearsay rule is not a "firmly rooted hearsay exception," this Court notes that the statement nevertheless bore "particularized guarantees of trustworthiness" allowing its admission into evidence.

A court may properly find the requisite indicia of reliability in a hearsay statement where same was made in an "unofficial setting [and] the declarant [enjoyed a] friendly relationship with the listener."  *United States v. Saget*, 377 F.3d 223, 227-30 (2d Cir. 2004). The transcript of the telephone call at issue reflects the fact during that call, Toland and his father engaged in a candid discussion during which Toland's father expressed his disbelief that Toland was being prosecuted for Dempster's death.  *See* Dkt. No. 21, Exh. A.  The statements in that recorded conversation, viewed in the context of who made them, when they were made and the content of those statements, contained sufficient guarantees of trustworthiness so as to be properly introduced against Toland.

[25]    Petitioner alternatively claims that the trial court erred by not directing the prosecution to play to the jury the entire conversation in which he and his father engaged.  *See* Petition at ¶ 12(6).  In support of that claim, Toland argues that the jury was not permitted to view Toland's incriminating statements in the proper context.  *Id.*  The Court's review of the transcript of the conversation between Toland and his father reveals that this claim is without substance; Judge Catena properly limited the evidence heard by the jury to the relevant portions of that audiotape recording.

being threatened with: "criminal prosecution, for continuing with this matter [and] for being threatened with sanctions by the [attorney disciplinary] committee." *Id.* Judge Catena denied the mistrial application. *Id.* at p. 771.

To prevail on his motion for a mistrial, defense counsel was required to establish the existence of "an error or legal defect in the proceedings ... which [was] prejudicial to [Toland] and deprive[d] him of a fair trial." *See* CPL § 280.10(1). A habeas petitioner is entitled to relief on a claim based upon a state court's failure to grant a motion for mistrial "only where [the] petitioner can show that the error deprived [him] of a *fundamentally fair* trial." *See* *Wilson v. Senkowski*, No. 02CIV.0231, 2003 WL 21031975, at *12-13 (S.D.N.Y. May 7, 2003) (emphasis in original) (citing *Rosario v. Kuhlman*, 839 F.2d 918, 925 (2d Cir. 1988)) (internal quotation marks omitted).

The only basis upon which defense counsel argued that he was entitled to a mistrial was his belief that he labored under a conflict of interest. *See* Trial Tr. at pp. 769-71. This Court, however, has found that counsel was not under any conflict of interest. The Appellate Division therefore properly concluded that the County Court did not err in denying counsel's motion for a mistrial. *See Toland*, 2 A.D.3d at 1055.

### f.    **Deficient Jury Instruction**

Toland next argues that the charge provided by the County Court to the jury was constitutionally defective. *See* Petition at ¶ 12(10). Specifically, he argues that the trial court's charge concerning the concepts of direct and circumstantial evidence "did not alert the jury as to any standard of proof for evaluating the circumstantial evidence," contrary to Toland's constitutional rights. *Id.*; *see also* App. Br. at p. 58.

### i.      **Clearly Established Supreme Court Precedent**

Before a federal court may overturn a conviction due to an allegedly erroneous jury instruction, "it must be established not merely that the instruction is undesirable, erroneous, or even universally condemned, but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment."  *Cupp v. Naughten*, 414 U.S. 141, 146 (1973) (internal quotation omitted); *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp*). Additionally, the Supreme Court has observed that "[t]he burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal."  *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (footnote omitted).

### ii.      **Contrary To, or Unreasonable Application of, Clearly Established Supreme Court Precedent**

Judge Catena instructed the jury that there were two types of evidence for it to consider; direct evidence and circumstantial evidence.  Trial Tr. at p. 1588.  After defining both types, the court then advised the jury that it was "entitled to consider both kinds of evidence" in arriving at a verdict.  *Id.* at p. 1589.  Additionally, Judge Catena instructed the jury that in determining whether the prosecution had established Toland's guilt beyond a reasonable doubt, the jury could "consider all the evidence presented," *id.* at p. 1579, and that the jury should be "guided solely be a full and fair evaluation of the evidence."  *Id.*  The County Court's instructions regarding the burden of proof in the criminal matter accurately reflected the level of proof the prosecution was required to meet for the jury to properly convict Toland of the murder charge.  *See id.* at pp. 1578-81.

Since petitioner has not demonstrated that Judge Catena's jury instructions were erroneous or incomplete in any way, he has *a fortiori* failed to demonstrate that the Appellate Division's decision denying this appellate claim, *see Toland*, 2 A.D. 3d at 1057, is either contrary to, or represents an unreasonable application of, *Cupp* and its progeny. Therefore, the Court denies this ground for relief.

### g.   **Prosecutorial Misconduct**

The final theories asserted by Toland in support of his habeas application are based upon his claim that the prosecutor engaged in misconduct in the criminal matter below. Toland's principle claim in support of this ground rests upon his contention that Detective Thomas P. DiMezza of the Amsterdam Police Department falsely testified that information regarding the piece of cloth found at the scene of the crime was never made available to the general public. *See* Petition at ¶ 12(9). In support of his assertion that such testimony was false, Toland claims that information regarding the piece of cloth found at the scene was discussed in a 1996 trial in which Toland was a defendant, and that the prosecutor knowingly allowed Detective DiMezza's false testimony to be heard by the jury to create the (erroneous) impression that Toland could have only known about the cloth (which Hernandez testified Toland had used in his initial attempt to strangle the victim) because he was necessarily present at the crime scene.[26] *Id.*

### i.   **Clearly Established Supreme Court Precedent**

The Supreme Court has held that a conviction obtained by the knowing use of perjured

---

[26]     Toland asserts that in 1996, he was convicted of murdering another individual, and that, at that trial, the prosecution presented evidence relating to Dempster and the "strip of cloth." *See* CPL § 330 Motion at pp. 14-15.

testimony on the part of the prosecution "is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnote omitted). Thus, "[a] conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." *Napue v. Illinois*, 360 U.S. 264, 269 (1959). Additionally, a criminal defendant's right to a fair trial is mandated by the Due Process Clause of the United States Constitution. *Albright v. Oliver*, 510 U.S. 266, 273 n.6 (1994) (citing *Agurs*, 427 U.S. at 107).[27] For habeas relief to be granted based on a claim of prosecutorial misconduct, however, the alleged misconduct must have "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In considering such a claim, courts are to focus on "the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

>        **ii.    Contrary To, or Unreasonable Application of, Clearly Established Supreme Court Precedent**

Toland asserted his claim that the prosecutor knowingly allowed perjurious testimony to be introduced at trial in petitioner's CPL § 330 Motion. *See id.* at pp. 13-17. In denying that claim, Judge Catena found that Toland did not establish his perjury claim, *see* December, 2001 Order at p. 3, and the Third Department found Toland's appeal of this issue to be "without merit." *Toland*, 2 A.D.3d at 1057.

---

[27]    "A right to a fair trial is a right ... protected by the due process clause of the Fourteenth Amendment." *Adamson v. People of State of California*, 332 U.S. 46, 53 (1947) (footnote omitted).

42

To prevail on this claim, Toland must initially demonstrate that perjury was in fact committed at his trial. *See United States v. White*, 972 F.2d 16, 20 (2d Cir. 1992); *Vail v. Walker*, No. 96-CV-578, 1997 WL 695583, at *5 (N.D.N.Y. Nov. 4, 1997) (Homer, M.J.) (citing *White*), *adopted Vail v. Walker*, No. 96-CV-578 (Dkt. No. 49) (N.D.N.Y. Aug. 24, 1999) (Scullin, J.), *appeal dismissed*, *Vail v. Walker*, No. 99-2554 (2d Cir. Mar. 23, 2001). To demonstrate perjury on the part of an individual, a party must "prove not only that false testimony was given, but that it was given willfully and knowingly." *People v. Monaco*, 32 A.D.3d 241, 243 (1st Dept. 2006) (quoting *People v. Hattemer*, 4 A.D.2d 775, 776 (1957), *aff'd*, 4 N.Y.2d 835 (1958)).

In the subject case, petitioner's claim that Detective DiMezza committed perjury is based upon the fact that evidence of the strip of cloth was apparently discussed in a 1996 murder trial involving Toland, as well as appellate briefs that were submitted to the Third Department following Toland's murder conviction. *E.g.* CPL § 330 Motion at pp. 13-15. However, although Toland claims that several witnesses who testified at the 1996 trial also testified in the trial that resulted in the conviction challenged herein, conspicuous by its absence is any allegation – in the state courts or this proceeding – that Detective DiMezza – the individual who purportedly committed perjury – ever testified at the 1996 proceeding. *See*, *e.g.*, Petition at ¶ 12(9); Supporting Mem. Nor is there any proof that the Montgomery County District Attorney who prosecuted the 2001 criminal matter that is the subject of present action was aware of either the trial testimony or appellate briefs relating to the 1996 Schenectady

County trial involving Toland.[28]

In sum, petitioner has not submitted any proof which establishes that:  i) Detective DiMezza willfully and knowingly provided false testimony at Toland's 2001 trial; or ii) the Montgomery County prosecutor knowingly elicited false testimony relating to the strip of cloth.  This Court therefore adopts the County Court's finding that the prosecution did not "solicit[] or allow[] to go uncorrected false testimony."  *See* December, 2001 Order at p. 3.  His federal claim which alleges that the prosecutor knowingly used perjurious testimony, and/or allowed such testimony to be heard by the jury, is therefore necessarily without substance.

Toland also claims that the prosecutor failed to timely disclose various police reports that were beneficial to the defense.  *See* Petition at ¶ 12(2)(i).  This claim necessarily invokes the Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83 (1963), in which that Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Brady*, 373 U.S. at 87.  However, evidence is not "suppressed" for purposes of *Brady* where counsel is already aware of the information upon which the *Brady* claim is based.  *See United States v. Grossman*, 843 F.2d 78, 85 (2d Cir. 1988) (no *Brady* violation occurs where defendant knew or should have known the essential facts concerning the exculpatory evidence) (citation omitted); *United States v. Middlemiss*, 217 F.3d 112, 113 (2d Cir. 2000) (government does not have *Brady* obligations when the defendant is

---

[28]        Magistrate Judge Victor E. Bianchini recently noted that Toland's 1996 murder trial resulted in a transcript that was in excess of 6,000 transcribed pages, involved over ninety witnesses and was comprised of nearly three hundred exhibits.  *See Toland v. Walsh*, No. 02-CV-0399, Dkt. No. 43 at p. 4 n.4 (N.D.N.Y. Aug. 20, 2007).

already aware of the information); *see United States v. Gonzalez*, 110 F.3d 936, 944 (2d Cir. 1997) (evidence "is not considered to have been suppressed within the meaning of the *Brady* doctrine if the defendant or his attorney either knew, or should have known of the essential facts permitting him to take advantage of [that] evidence"); *Conteh v. United States*, 226 F.Supp.2d 514, 522 (S.D.N.Y. 2002) ("[a] defendant cannot satisfy the suppression requirement if the defendant, directly or through counsel, either knew, or should have known, of the essential facts permitting him to take advantage of [that] evidence") (internal quotation, citation and footnote omitted). This habeas claim is therefore without substance.

Toland's final claim alleging prosecutorial misconduct alleges that the District Attorney improperly bolstered the testimony of Fernandez. *See* Petition at ¶ 12(10)(a). Specifically, he claims that the prosecutor, in his summation, improperly claimed that Fernandez's testimony bore a "guarantee of reliability," *id.*, and that such conduct deprived Toland of his right to a fair trial.

In his closing argument, the prosecutor made the following comments:

> [H]ow did Francesco Fernandez know about the cloth, unless the defendant told him? [Toland's counsel] says that Francesco Fernandez's statement stands alone. Well, he's right. He's absolutely right. It stands alone. It's right out there for you to grab onto. But there is a guarantee of reliability there, ladies and gentlemen, and that is certain information that Francesco Fernandez could only have gotten from the defendant.

Trial Tr. at p. 1567.

The Second Circuit has "repeatedly held that final arguments of counsel may be vigorous and robust if based on the evidence in the record." *United States v. Smith*, 778 F.2d 925, 929 (2d Cir. 1985); *Campbell*, 440 F.Supp.2d at 155 (citations omitted). As the Second

Circuit noted in *United States v. Myerson*, 18 F.3d 153 (2d Cir. 1994), counsel "are entitled to broad latitude" in their closing arguments, "provided they do not misstate the evidence." *Myerson*, 18 F.3d at 163; *see also Campbell*, 440 F.Supp.2d at 155 ("'[b]oth prosecution and defense are entitled to broad latitude in the inferences they may suggest to the jury during closing arguments'") (quoting *United States v. Suarez*, 588 F.2d 352, 354 (2d Cir. 1978)).

This Court finds that the prosecutor's remarks during his summation relating to Hernandez did not rise to the level of misconduct sufficient to warrant federal habeas intervention, but instead reflected fair comment regarding the evidence adduced at trial as well as a measured response to defense counsel's closing argument, in which counsel argued that the jury should consider whether Hernandez's testimony was "worthy of belief." Trial Tr. at p. 1520.

In sum, Toland has not demonstrated that the Appellate Division's decision denying his appellate claim alleging prosecutorial misconduct is either contrary to, or represents an unreasonable application of, relevant, clearly established Supreme Court precedent. This Court therefore denies this final claim asserted by Toland in support of his application for federal habeas intervention.

**III.    Certificate of Appealability**

Finally, the undersigned notes that 28 U.S.C. § 2253(c)(1) provides in relevant part that:

> Unless a circuit justice or judge issues a certificate of
> appealability, an appeal may not be taken to the court of appeals
> from –
>
>> (A) the final order in a habeas corpus proceeding
>> in which the detention complained of arises out of

46

process issued by a State court ....[29]

A Certificate of Appealability may only be issued "if the applicant has made a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2).  Since petitioner has failed to make such a showing herein, the Court declines to issue any Certificate of Appealability in this matter.

**WHEREFORE**, after having reviewed the state court record, the documents submitted by the parties in conjunction with this action, the applicable law, and for the reasons discussed herein, it is hereby

**ORDERED**, that the petition in this matter is **DENIED** and **DISMISSED**, and it is further

**ORDERED**, that the state court records not filed herein be returned directly to the Attorney General at the conclusion of these proceedings (including any appeal of this Memorandum-Decision and Order filed by any party), and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order upon the parties by regular or electronic mail.

Dated  :       January 4, 2008

Gary L. Sharpe
U.S. District Judge

---

[29]       Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  *See* Fed.R.App.P. 22(b).